OPINION
{¶ 1} This matter is before the Court on the Notice of Appeal of Darrell Richardson, filed August 28, 2007, and the State's Motion to Dismiss, filed May 16, 2008. On March 27, 2007, a detective from the Bellbrook Police Department issued Richardson a misdemeanor citation for assault, in violation of R.C. 2903.13(A). On the same day, counsel for Richardson entered an appearance in Xenia Municipal Court, and Richardson pled not guilty. A pretrial conference was *Page 2 
held on May 16, 2007. On June 18, 2007, a Notice of Trial was mailed to Richardson, advising him that his trial would be held on August 15, 2007. The Notice provides in part, "All requests for continuance must be filed in the form of a motion and entry." On August 15, 2007, the day of trial, counsel for Richardson filed a "Motion to Withdraw Appearance," which provided in part," * * * Defendant has terminated the relationship of attorney/client with this counsel and advised that another attorney (one, Washington) will take over the defense of the case on Defendant's behalf." The trial court sustained the motion, and Richardson orally moved the court for a continuance. The trial court refused, and following a bench trial, during which Richardson was unrepresented, Richardson was found guilty. The trial court sentenced Richardson to 180 days in jail and ordered him to have no contact with the victim, her family or property for 10 years.
 {¶ 2} Of initial note, the State filed two motions for extensions of time to file its brief, arguing that Richardson had failed to provide the State with a copy of his brief. The State filed its Motion to Dismiss based on Richardson's failure to provide the State with his brief. Richardson filed a response, arguing that he served a copy of the brief by hand on December 17, 2007, the day he filed the brief in Greene County, and that he again, by certified mail, supplied a copy of the brief to the State on May 22, 2008. We granted the State's motions for extension of time, and on July 15, 2008, when we still had not received the State's brief, we issued a Show Cause Order, granting the State 14 days to file a brief or show cause, in writing, as to why the matter should not be submitted to the court and considered on the merits in the absence of the State's brief. The State did not respond or file a brief. The State's motion to dismiss is overruled, and we will address the merits of Richardson's brief.
 {¶ 3} Richardson asserts one assignment of error as follows: *Page 3 
 {¶ 4} "APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO COUNSEL AT TRIAL PURSUANT TO THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND OHIO CONSTITUTION ARTICLE I SECTION 10."
 {¶ 5} "A criminal defendant's right to the assistance of counsel is guaranteed. The Sixth Amendment to the United States Constitution and Article One, Section Ten of the Ohio Constitution grant defendants the right to counsel in all criminal prosecutions. Furthermore, `absent a knowing and intelligent waiver, no person may be imprisoned for an offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial.' Argersinger v. Harlin (1972),407 U.S. 25, 37, 92 S.Ct. 2006, 32 L.Ed.2d 530. Additionally, Crim. R. 5(A) and 44 were designed to ensure that Ohio laws regarding assistance of counsel comply with federal constitutional standards. 2 Katz 
Giannelli Criminal Law (1996) 9, Section 36.4. Crim. R. 5(A) provides, in pertinent part: `Procedure upon initial appearance. When a defendant first appears before a judge or magistrate, the judge or magistrate shall permit the accused or his counsel to read the complaint or a copy thereof, and shall inform the defendant: * * * (2) That he has a right to counsel and the right to a reasonable continuance in the proceedings to secure counsel, and, pursuant to Crim. R. 44, the right to have counsel assigned without cost to himself if he is unable to employ counsel'.
 {¶ 6} * *
 {¶ 7} "Upon review, we may not reverse the trial court's denial of a continuance absent an abuse of discretion. State v. linger (1981), 67 Ohio St.2d 65, 67, 423 NE.2d 1078. Appellate courts must apply a balancing test in deciding whether the trial court's denial of a continuance was unreasonable, arbitrary, or unconscionable. Id. at 67,423 N.E.2d 1078. Thus, we must weigh the potential prejudice to a defendant against the trial court's `right to control its own docket and the *Page 4 
public's interest in the prompt and efficient dispatch of justice.'Id. at 67, 423 N.E.2d 1078. The Unger court further explained:
 {¶ 8} "`In evaluating a motion for a continuance, a court should note,Inter alia: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.
 {¶ 9} Id. at 67-68, 423 N.E.2d 1078.'" State v. Gray (Nov. 14, 1997), Montgomery App. No. 16282, at *2-3. "`The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.'"Unger, at 67 (Internal citation omitted).
 {¶ 10} The following lengthy exchange occurred on the record on the day of trial:
 {¶ 11} "THE COURT: Mr. Richardson, is your Counsel here, your other counsel?
 {¶ 12} "THE DEFENDANT: I talked with him. He had a court date in another case. He also explained to me that, in order to be my Counsel, the Counsel that I have already has to be relieved.
 {¶ 13} "THE COURT: * * * did you pay this attorney yet?
 {¶ 14} "THE DEFENDANT: No, I have not.
 {¶ 15} "THE COURT: Okay.
 {¶ 16} "THE DEFENDANT: I talked with him after I left Mr. Robinson's office yesterday and the decision was made at that point and a motion written up, yes, ma'am.
 {¶ 17} "THE COURT: * * * Well, this case is scheduled for trial today. How many people do you have here? *Page 5 
 {¶ 18} "MR. LEWIS: We have the victim and at least two officers, I think, Your Honor.
 {¶ 19} "THE COURT: * * * It is scheduled for a trial today. So, * * * this last minute stuff does not work because he's got officers here — let's see, 7 a.m. — probably on over time for the City of Bellbrook. * * * And I'm not wasting that money.
 {¶ 20} "THE DEFENDANT: Would you like for me to pay it?
 {¶ 21} "THE COURT: No, what I want you to do is we are going to have a trial today. I don't have any notice from another attorney. They will not put their notice in, as Mr. Robinson did back in March, until they are hired. So the trial is today. You can proceed without Counsel, but we are not changing the date at the last minute because you suddenly can't get along with your Counsel.
 {¶ 22} "THE DEFENDANT: Well, Your Honor, there's more to it, really. I have witnesses also that are supposed to be here. There's a lot of facts involved, and I'm not capable of representing myself. I don't have the skills, and I thought I understood that I had a right to Counsel * * * by the Constitution.
 {¶ 23} "THE COURT: You do have a right to Counsel and you had Counsel enter an appearance for you on March 27th . You do not have the right to — the Constitution does not say that you have the right to change your mind at the last minute and everybody has to come back for you. It does not say that.
 {¶ 24} "THE DEFENDANT: Yes, ma'am.
 {¶ 25} "THE COURT: Plus, you don't have another attorney at this point because you have not hired one. So this last-minute switching around is not going to happen. I have people tell me all the time that they have hired an attorney and I find out they have not paid one dime for that person * * * . If you have not done that, the trial is today. You received notice two months ago. *Page 6 
 {¶ 26} "THE DEFENDANT: Actually, I have the money to pay my lawyer today in my pocket.
 {¶ 27} "THE COURT: Well, then, he should have been here. You know, you should have paid him and he should have — here is the bottom line: I'm not continuing this after all these people come in ready to go, taking time out of their schedule, out of their lives to accommodate your right to counsel. I'm not doing that. I will let Mr. Robinson out, if you cannot get along with him, but we are trying the case.
 {¶ 28} "THE DEFENDANT: Well, it's not that I could not get along with him, Your Honor. I can't represent myself. I just — I don't even have my witnesses here.
 {¶ 29} "THE COURT: Mr. Robinson, do you want to stay on the case?
 {¶ 30} "MR. ROBINSON: Actually, I'm not prepared to stay on the case. All the discovery is with Mr. Richardson. I thought we were going to prepare last week. So I would like to go forward with that motion.
 {¶ 31} "THE COURT: Well, are you asking Mr. Robinson to stay on the case if you are trying it today?
 {¶ 32} "THE DEFENDANT: He's not prepared. He's not able to handle it. Neither am I, Judge.
 {¶ 33} * *
 {¶ 34} "THE DEFENDANT: Your Honor, I have a brother right now that is also a witness. He has cancer and he may die any day. He also wants to be here, along with two other members —
 {¶ 35} "THE COURT: Well, another date is not going to accommodate him any better than today, is it? *Page 7 
 {¶ 36} "THE DEFENDANT: * * * I need my witnesses here.
 {¶ 37} "THE COURT: * * * Why isn't he here?
 {¶ 38} "THE DEFENDANT: Well, he isn't able to.
 {¶ 39} "THE COURT: Well, it does not sound like he's going to be able to.
 {¶ 40} "MR. LEWIS: If I may inquire, there is a simple discovery request on. There's never been a witness list submitted to the Prosecutor's Office. It is our understanding that the only people that were at the actual alleged incident was the victim and her children. If that is not the case, where did the other individuals come from?
 {¶ 41} * *
 {¶ 42} "THE DEFENDANT: But there was other instances —
 {¶ 43} "MR. LEWIS: * * * this one particular incident, was there anybody else there other than these folks?
 {¶ 44} "THE DEFENDANT: Not that I know of.
 {¶ 45} * *
 {¶ 46} "THE COURT: * * * well we are not trying other instances. We are trying this one.
 {¶ 47} (Discussion had off the record)
 {¶ 48} "THE DEFENDANT: Your Honor, is it possible to get a short recess so I can see if I can get my family members in and the people I need and possibly get this attorney in here?
 {¶ 49} "THE COURT: Where do you live?
 {¶ 50} "THE DEFENDANT: In Dayton, Ohio.
 {¶ 51} "THE COURT: Where do your witnesses live?
 {¶ 52} "THE DEFENDANT: In Dayton, Ohio. *Page 8 
 {¶ 53} "THE COURT: Sir, this is a 1:00 trial. What time is it now?
 {¶ 54} "MR. LEWIS: 1:40.
 {¶ 55} "THE COURT: No. We are not continuing it. You received a trial notice two months ago that your trial was at 1:00 today. * * * although it's been five months, I would have considered changing the date for you.
 {¶ 56} * *
 {¶ 57} "THE COURT: — but not after everybody comes in, takes off work, takes time out of their lives.
 {¶ 58} * *
 {¶ 59} "THE COURT: So the trial is now. Resolve it, if you want. You can talk to the prosecutor, but I'm not changing the date and I'm not going to wait for people to leave wherever they are and come over here, and, you know, that would be at least half an hour, if they could drop everything, every one of them, and run over here. So we are not doing that."
 {¶ 60} The State then called the victim to testify, and at the conclusion of her testimony, the trial court asked Richardson if he had any questions for the victim. The following exchange occurred:
 {¶ 61} "THE DEFENDANT: * * * One is do I have the right to an attorney?
 {¶ 62} "THE COURT: You had the right to an attorney. You have waived that right by not coming prepared.
 {¶ 63} "THE DEFENDANT: I don't want to waive my right."
 {¶ 64} Weighing the potential prejudice to Richardson against the trial court's right to control its own docket and the public interest in the prompt and efficient dispatch of justice, we now *Page 9 
apply the Unger test to the facts before us. We note that Richardson did not request a continuance of specific duration, and we cannot tell from the record before us whether, had the continuance been granted, the new trial date would have been days or months away. Richardson had not previously requested any continuances. In terms of inconvenience to litigants, witnesses, opposing counsel and the court, there were witnesses present who expected to testify.
 {¶ 65} According to Richardson, he met with his retained attorney the day before trial and was dissatisfied with his level of preparation. Counsel for Richardson conceded that he was not prepared, noting that Richardson possessed all the discovery. Counsel's statement, "I thought we were going to prepare last week," (the day of trial was a Wednesday) suggests that Richardson may have been dilatory in meeting with his attorney to prepare, and that he contributed to the circumstances culminating in his last minute request for a continuance.
 {¶ 66} Richardson also stated that he needed a continuance due to the absence of his witnesses. No witness list had been submitted to the prosecutor's office. Richardson did not assert that his absent witnesses would present exculpatory evidence. In fact, the record indicates that his witnesses were not present when the assault occurred, and that their testimony would be directed to "other instances." As the trial court correctly noted, it is improbable that Richardson's brother, who "may die any day," would have been able to appear at a later date.
 {¶ 67} Richardson relies upon Gray, in which we reversed and remanded the trial court's decision denying Gray's motion for a continuance.Gray is distinguishable. Gray requested a continuance on the day of trial due to his attorney's failure to appear. We determined, "Gray's request does not appear to be part of a `conscious tactical design' to delay the proceedings. (Internal citations omitted). Gray had not requested or received any other continuances. The record does not *Page 10 
reflect that Gray sought to continue the proceedings for a `dilatory, purposeful, or contrived' reason; rather, he indicated to the trial court that he had contacted an attorney whose family business prevented him from attending Gray's trial. It does not appear that Gray contributed to the circumstances that prevented that attorney from being present. Furthermore, Gray indicated that he had contacted another attorney who would represent him if his trial were continued. While a continuance may have caused some inconvenience to the state and its witnesses, this factor does not outweigh Gray's right to counsel and his legitimate reasons for requesting a continuance."
 {¶ 68} Richardson, like Gray, had not previously requested any continuances, and there were witnesses who would be inconvenienced, but Richardson's reasons for the continuance, unlike Gray's "legitimate reasons," did not weigh in favor of the continuance. Richardson's attorney expected an earlier meeting with his client "last week," but Richardson delayed meeting with him until the day before trial. While Richardson contacted another attorney, it was not reasonable to expect an as yet unretained attorney to be present and prepared for trial on such short notice. Richardson did not argue that his absent witnesses would present exculpatory evidence but rather evidence regarding "instances" not before the court. Since Richardson, unlike Gray, contributed to the circumstances behind his untimely request for a continuance, the trial court did not abuse its discretion in denying his untimely request.
 {¶ 69} Finally, Richardson argues that he did not waive his right to counsel. "Although we will presume that the right to counsel has not been waived, Johnson v. Zerbst (1938), 304 U.S. 458, 464, 58 S.Ct. 1019,82 L.Ed. 1461, this right can be waived if done knowingly, intelligently, and voluntarily. (Internal citation omitted). Because a waiver cannot be presumed from a silent record, the record must show, `that an accused was offered counsel but intelligently and understandingly *Page 11 
rejected the offer. Anything less is not waiver.' (Internal citation omitted). Waiver of counsel must be conducted `in open court and the advice and waiver shall be recorded as provided in Rule 22.' Crim. R. 44(C)
 {¶ 70} "It has been held that a trial court may infer from a criminal defendant's conduct that he has waived the right to counsel: `[W]hen a defendant refuses to take effective action to obtain counsel, and on the day of trial requests a continuance in order to delay the trial, the court may, under proper conditions, be permitted to infer a waiver of the right to counsel.' State v. Hook (1986), 33 Ohio App.3d 101, 103,514 N.E. 2d 721. In State v. Crebs, (1987), 42 Ohio App.3d 50, 52,536 N.E.2d 52, the appellate court affirmed the trial court's inference that the defendant had waived his right to counsel. The Crebs court pointed out that the defendant, who had past experiences with the criminal justice system, knew how to request a continuance and failed to do so until the day of trial. The court characterized this eleventh hour motion for continuance as `an unreasonable request to delay the trial.'Id. at 52, 536 N.E.2d 52." Gray, at * 4.
 {¶ 71} The trial court concluded that Richardson waived his right to counsel, although Richardson stated he did not want to do so. We agree that Richardson impliedly waived his right to counsel by inexcusably refusing to take effective action ahead of trial. On June 18, 2007, notice was mailed to Richardson advising him of his August trial date, and that "All requests for continuance must be filed in the form of a motion and entry." Richardson met with his retained counsel the day before trial, terminated their relationship, and did not timely retain other counsel. Had Richardson's conduct not been dilatory, he could have secured counsel, and properly filed a motion for continuance, which would have required the trial court to grant a reasonable continuance.
 {¶ 72} Richardson's first assignment of error is overruled, and the judgment of the trial court is affirmed.
BROGAN, J. and FAIN, J., concur. *Page 1